IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HOLDEN GRAVES, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Plaintiff*, | |
| v. | |
| MISSOURI DEPARTMENT OF CORRECTIONS, et al., | No. 4:24-CV-01693-JMD |
| *Defendants*. | |

**MEMORADUM AND ORDER**

Holden Graves, an inmate, sued the Missouri Department of Corrections, Centurion of Missouri and eight of their employees, three correctional officers, and the warden of the prison where Graves was housed. He asserts state and federal claims about prison conditions. But he admits he has not exhausted his administrative remedies under the Prison Litigation Reform Act. That is fatal. The Court **GRANTS** the defendants' motions to dismiss. ECF 39, 41, 53, 65, 94, 107.

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (citation

1

omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

When reviewing a motion under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the nonmovant's favor. *Healy v. Fox,* 46 F.4th 739, 743 (8th Cir. 2022). But the Court is not bound by legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## Factual Background

Graves alleges that, because of hallucinations, he jumped from a balcony within a Missouri state prison facility on March 11, 2024, and experienced serious injuries. ECF 36 at 6. He alleges medical neglect, including significant and unnecessary delays before receiving medical attention.

Corrections officials then transferred Graves to another facility.[1] There, he began the internal grievance process by submitting an "Informal Resolution Request" required by Missouri's grievance process. ECF 36 at 17. He says that he has been informed that at least seven staff members were fired because of the incident and that an internal investigation continues. ECF 36 at 17. But he otherwise says he has "yet to receive an update." *Id*.

Graves does not disagree that the grievance process includes three steps. A litigant must first submit an Informal Resolution Request within 15 calendar days of an incident. Missouri Department of Corrections Offender Rulebook at 62 (2019).[2] Prisoners are supposed to receive a response within 40 calendar days. *Id*. The next step is filing an Offender

---

[1] Graves' complaint says he was transferred to the Farmington Correctional Center around December 5, 2023. ECF 36 at 17. But that date was before the March 2024 injuries, and he elsewhere says the transfer occurred after those injuries. ECF 109 at 11.

[2] https://doc.mo.gov/sites/doc/files/media/pdf/2020/03/Offender_Rulebook_REVISED_2019.pdf

2

Grievance form. *Id*. The third and final stage is an administrative appeal. *Id*. At each stage, inmates may proceed to the next stage if they have not received a response within the allotted time frame. *Id*.

Graves alleges that he completed the first part of the three-step process, but he concedes he never completed the second or third. ECF 36 at 17; ECF 47 at 1. Instead, he sued, asserting three claims under state law and three claims under federal law against 14 defendants. All defendants have asserted the affirmative defense of failure to exhaust administrative remedies under the Prison Litigation Reform Act. *See Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (describing exhaustion as an affirmative defense). They say Graves' failure to exhaust is evident from the face of the complaint.

## Analysis

Prisoners must exhaust internal grievance procedures before suing about prison conditions. Under the Prison Litigation Reform Act, which the parties agree applies, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). This means exhausting the internal grievance procedures created by the prison because "it is the prison's requirements, and not the [Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Courts can grant motions to dismiss for failure to exhaust. Although exhaustion is an affirmative defense, "a court may dismiss a complaint for failure to exhaust administrative remedies if it is plain on the face of the complaint that a grievance procedure has not been exhausted." *Davis v. Torshein*, No. 1:22-cv-00080-SEP, 2022 WL 4299780, at *2 (E.D. Mo.

3

Sept. 19, 2022) (citing *Jones*, 549 U.S. at 215–16), *aff'd,* No. 22-3112, 2022 WL 19408218 (8th Cir. Nov. 28, 2022).

Graves admits that he did not exhaust the Missouri Department of Corrections' grievance process. ECF 36 at 17; ECF 47 at 1. Graves asserts that he completed only the first step, and he makes no contention that he satisfied the other two. But, as Graves does not dispute, the Missouri Department of Corrections has a three-step grievance process. That is a problem for Graves because exhaustion is "mandatory" under the Act; "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Judges lack discretion to deviate from this mandate. *Ross v. Blake*, 578 U.S. 632, 638–39 (2016).

So Graves tries to evade exhaustion by arguing that steps two and three of the grievance process were unavailable. An inmate is required to exhaust only "available" options—those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

But Graves fails to plead unavailability sufficiently. Case law recognizes three circumstances where an "administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the procedure "operates as a simple dead end"; (2) when the scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. Graves pleads none of these. He argues that the grievance process was unavailable because he allegedly never received a "meaningful[]" or "substantive" response to his informal resolution request. ECF 97 at 10; ECF 47 at 1. But he includes no allegation that the defendants' supposed failure to respond prevented Graves from continuing to the next step of the process.

4

*Contra Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ("Foulk's testimony further indicates, however, that [the corrections department's] failure to respond to his IRR precluded him from filing a grievance . . . ."). And the Department of Corrections manual—which Graves indirectly embraces in his complaint by citing the "Informal Resolution Request" he filed, ECF 36 at 17—is clear that a prisoner "may proceed to the grievance stage" "[i]f you have not received a response" to an "informal resolution request." Offender Rulebook at 62.[3] Graves submitted his informal resolution request in April 2024. By mid-June—well before he sued in November 2024—Graves had the ability to move to the second step and submit an Offender Grievance form. Graves cannot go to federal court before giving the prison a "fair opportunity to consider the grievance." *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006).

Comity interests caution federal courts against premature interference with state prisons. "It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez,* 411 U.S. 475, 491–92 (1973). Because prison officials have not first addressed Graves' grievance, there is no "useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89 (citation omitted). Graves must exhaust his claim using the prison's process before suing in federal court.

---

[3] Although the complaint does not expressly cite the manual by name, the complaint's reference to the "Informal Resolution Request (IRR)" in the manual is an apparent reference to the manual. In response to that reference, the defendants noted the three-part process in the manual, which Graves never disputes. The manual is also publicly available on the website for the Missouri Department of Corrections, *supra* n.2, and subject to judicial notice, *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (taking judicial notice of government websites).

5

Graves also argues that his transfer to another facility along with his severe physical injuries impeded his ability to submit a claim. ECF 47 at 1; ECF 97 at 10; ECF 109 at 11. But he submitted the informal resolution request *after* his transfer. ECF 36 at 17. And he includes no sufficient factual allegations to back up his contention that his injuries precluded following the process. The cases he cites do not excuse exhaustion because of a transfer or physical incapacitation. See *Foulk*, 262 F.3d at 698 (excusing exhaustion because testimony suggested that the prison's failure to respond was an effective dead end); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001) (accepting a prisoner's allegation that corrections officials "prevented him from exhausting").

Exhaustion is required for all claims under 1983 or "any other federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). To the extent the Court retains jurisdiction over the state law claims alleged here, and having considered the "four factors enumerated in the federal supplemental-jurisdiction statute," *Wong v. Minn. Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016), the Court declines to exercise supplemental jurisdiction. A district court "ordinarily should" decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025).

**IT IS HEREBY ORDERED** that the defendants' motions to dismiss, ECF 39, ECF 41, ECF 53, ECF 65, ECF 94, and ECF 107 are granted.  The Clerk of Court is directed to close this case.  A separate order of dismissal will accompany this memorandum and order.

Dated this 23rd day of January, 2026

                                                                       _____
                                                                       JOSHUA M. DIVINE
                                                                       UNITED STATES DISTRICT JUDGE